UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In the Matter of the Arbitration between

THE LOCAL 807 LABOR-MANAGEMENT                    18-CV-
HEALTH AND PENSION FUNDS and THE
LOCAL 807 PROFIT SHARING FUND,

                           Petitioners,

          v.

SHOWTIME ON THE PIERS, LLC,

                           Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## PETITION TO CONFIRM AN ARBITRATION AWARD

Petitioners, the Trustees of the Local 807 Labor-Management Health Fund (the "Health Fund"), the Trustees of the Local 807 Labor-Management Pension Fund (the "Pension Fund") and the Trustees of the Local 807 Profit Sharing Fund (the "Profit Sharing Fund") (collectively, the "Funds), by their attorneys, Cary Kane LLP, for their Petition to Confirm an Arbitration Award, allege as follows:

## NATURE OF THE CASE

1.      This is an action to confirm an arbitration award (the "Award") which found the respondent employer, Showtime on the Piers, LLC ("Showtime"), liable to the Funds for unpaid contributions, interest, liquidated damages, legal fees and costs, arbitration fees and auditing fees pursuant to a collective bargaining agreement ("CBA") entered into by Showtime, with Local 807 of the International Brotherhood of Teamsters (the "Union). The Trustees of the Funds bring this

5925-1

action, as the fiduciaries of the Funds, in order to enforce the provisions of the CBA, plan documents, and the statutory obligations imposed on Showtime, as reflected in the Award. A copy of the Award is attached hereto as Exhibit "A".

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this proceeding pursuant to Section 9 of the Federal Arbitration Act ("FAA"), *9 U.S.C. § 9*, Section 301 of the Labor Management Relations Act ("LMRA"), *29 U.S.C. § 185*, and Sections 502 and 515 of  the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ *1132 and 1145*.

3.      Venue is proper in this Court pursuant to Section 502(e)(2) of ERISA, *29 U.S.C. §§ 1132(e)(2)*, and Section 9 of the FAA, *9 U.S.C. § 9*, as the arbitration was heard in this District.

## PARTIES

4.      Petitioners are the Funds' "fiduciaries" as defined by Section 3(21) of ERISA, *29 U.S.C. § 1002(21)*, and are authorized to act on the Funds' behalf.  At all relevant times, the Funds' office has been located at 32-43 49th Street, Long Island City, New York, in the county of Queens.

5.      At all relevant times, Showtime was an "employer" "affecting commerce" within the meaning of Section 3(5) of ERISA, *29 U.S.C. § 1002(5),* and sections 2(2), (6) and (7), of the LMRA, *29 U.S.C. § 152(2), (6) and (7).*  During the relevant periods, and continuing today, Showtime has contributed to the Funds on behalf of Union members covered by CBAs between the Union and Showtime.  At all relevant times, Showtime operated from offices located at 711 12th Avenue, New York, New York in New York County.

2

## THE BASIS FOR THE ARBITRATION

6.      At relevant times, the Union and Showtime were parties to a CBA, as amended, covering the terms and conditions of employment of Showtime's bargaining unit employees who were represented by the Union.

7.      Section 4 of the CBA requires Showtime to make contributions to the Profit Sharing Fund, in specific amounts, on behalf of its employees represented by the Union.

8.      Section 10 of the CBA requires Showtime to make contributions to the Pension Fund and the Health Fund, in specific amounts, on behalf of its employees represented by the Union.

9.      The CBA provides, at Section 10(D), for the Trustees of the Pension Fund and the Health Fund to establish rules and procedures governing the administration of the Funds.

10.      The rules and regulations governing the administration of the Funds, which Showtime agreed to follow, are contained in the Funds' Agreements and Declarations of Trust ("Trust Agreements").

11.      At all relevant times, the Trust Agreements for the Funds all elucidated the following rules and regulations for collection of unpaid contributions, including unpaid contributions identified during an audit of an employer's records:

> *"(b) The failure of an Employer to pay Contributions when due shall be a violation of the Written Agreement between the Employer and the Union or other agreement requiring contributions to the Fund, as well as a violation of the Employer's obligations hereunder. Contributions made or required to be made pursuant to such agreements are Fund assets from the date they are due under this Trust Agreement, whether or not they are paid or received by the Fund...*

> *...(c) Upon any contributing Employer becoming delinquent in its contribution obligation, failing to submit Contributions and/or Remittance Reports Forms when due, failing to pay interest, liquidated damages, attorneys' fees and costs*

*accruing on or incurred in collecting late or unpaid contributions to the Fund, failing to remit payment of an audit invoice and/or failing to submit to a requested payroll audit, or should a dispute arise concerning the obligation to make contributions, the Trustees or other Fund representative(s) designated by the Trustees, either by themselves or through counsel, may (i) commence proceedings to enforce the Employer's obligations, including, but not limited to, proceedings at law or equity, and through arbitration...*

*...(d) All arbitrations shall be conducted before an arbitrator selected from a panel of arbitrators jointly designated by the Employer and Union Trustees. Arbitration hearings and award shall be in conformance with the rules of the American Arbitration Association...... the arbitration award shall be issued in written form and will be final and binding."*

12.   The Funds' Trust Agreements each provide that any arbitration award in favor of the Trustees and/or Fund must include: (i) the unpaid or late contributions, (ii) interest at the rate of eighteen percent (18%) per year on any unpaid or late contributions from the date the contributions became due to the date of judgment or award, (iii) liquidated damages in an amount equal to twenty percent (20%) of the unpaid or late contributions, (iv) costs (including but not limited to auditors' fees and any arbitrator's fees, including cancellation fees), (v) reasonable attorneys' fees, (vi) costs and reasonable attorneys' fees incurred in connection with enforcing and/or confirming the judgment and/or arbitration award, (vii) interest at the rate of eighteen percent (18%) per year continuing to accrue on any unpaid portion of a judgment and/or arbitration award until the date that payment of such judgment and/or arbitration award is made, and (vii) such other relief that may be requested by the Trustees and/or awarded by the court or arbitrator.

13.   In or about May 2017, the Funds' auditors performed a payroll audit of Showtime's records for the period of October 1, 2014 through September 30, 2016. The auditors identified $26,843.85 in unpaid contributions due to the Health Fund, $30,780.82 in unpaid

4

contributions due to the Pension Fund, and $40,080.10 in contributions due to the Profit Sharing Fund.

14.     In accordance with the Funds' audit procedures, the auditors assessed interest on the unpaid contributions through May 17, 2017, the date of their report.   The auditors also included the costs of the audit in the amount due from Showtime.   The unpaid contributions, interest and audit costs totaled $127,637.02 (the "Findings").

15.     By letter dated May 17, 2017, the Funds sent Showtime a copy of the Findings and requested payments thereof.  Showtime did not pay the Findings.

16.     On or about August 22, 2017, Showtime asked to be allowed additional time to review the Findings and present a payment plan to the Funds.

17.     The Funds agreed to Showtime's request.

18.     On October 5, 2017, Showtime provided documents that purportedly showed errors in some of the Findings.

19.     The Funds' auditors reviewed the documents and determined that the documents did not indicate any errors in or otherwise affect the original Findings.

20.     By letter of October 31, 2017, Funds' counsel advised Showtime that the Funds would institute arbitration if the Findings were not paid by November 8, 2017.

21.     Showtime did not pay the Findings by November 8, 2017.


**THE ARBITRATION**

22.     On November 13, 2017, the Funds properly requested arbitration by an arbitrator jointly designated by the Employer and Union Trustees of the Funds.   The intent of the

arbitration was to recover the Findings, pursuant to applicable provisions of the CBAs and the Funds' Trust Agreements. Showtime received a copy of the Funds' request for arbitration.

23.     By letter of November 30, 2017, the Funds' the arbitrator, Earl Pfeffer (the "Arbitrator"), notified the Funds and Showtime that arbitration was scheduled for January 18, 2018.

24.     The afternoon before the arbitration, Showtime asked the Funds to cancel the arbitration in exchange for payment of the Findings at an unspecified future date.

25.     Showtime and the Funds agreed to the following arrangement: Showtime would provide the Funds with a postdated check in the amount of $100,000 prior to the start of the arbitration. While the arbitration would go forward as planned, the Funds would ask the arbitrator not to do any further work for two weeks in order to limit the Arbitrator's fees. During that period, Showtime would pay the remainder of the Findings, plus interest that had accrued since the date the Findings were issued, plus the fees charged for the arbitration by the Arbitrator, the Funds' auditors, and Funds' counsel. If Showtime paid these amounts in full, the Funds would waive liquidated damages and discretionary audit fees.

26.     Showtime provided the Funds with postdated checks totaling $99,999 as per its agreement with the Funds.

27.     The arbitration hearing was then held as scheduled without Showtime, whose absence was noted on the record. The Funds presented evidence to support their claims, including testimony of the auditors explaining the Findings.

28.     After the arbitration hearing, Funds' counsel sent Showtime calculations indicating the total due to the Funds, which now included auditor's fees, attorneys' fees and

arbitrator's fees related to the arbitration. The total due was reduced by Showtime's $99,999 payment, and did not include liquidated damages or discretionary audit fees.

29.     Showtime did not pay the remainder of its debt within the requisite two weeks. The Funds, thus asked the Arbitrator to provide a written decision for the arbitration on February 8, 2018.

30.     On February 20, 2018, Showtime paid the Funds an additional $10,000 towards its debt.

31.     On March 28, 2018, the Arbitrator issued a Decision and Award, which was emailed to Funds' counsel and Showtime. The Award requires Showtime to pay the Funds a total of $49,831.71 as follows: $14,322.67 to the Health Fund, $15,784.06 to the Pension Fund and $19,724.98 to the Profit Sharing Fund. The Award includes the remainder of the Findings, interest through January 26, 2018, the discretionary audit fees, and liquidated damages at a rate of 20% of the contributions due, as well as the attorneys' fees, auditors' fees and Arbitrator's fees for the arbitration.

32.     The Award further provides that interest shall continue to accrue until all delinquencies, including the interest, damages and costs are paid.

33.     On March 29, 2018, Funds' counsel also sent Showtime a copy of the Award via email.

34.     On April 6, 2018, Funds' counsel sent Showtime a demand for payment of the Award via email and first class mail.

35.     Showtime has not paid any portion of the Award.

36.     As a result of Showtime's failure to abide by the Award, the Funds now seek judicial enforcement thereof.

4818-1280-3174, v. 1

WHEREFORE, the Trustees of the Local 807 Labor-Management Health Fund, the Local 807 Labor-Management Pension Fund and the Local 807 Profit Sharing Fund, the Petitioners herein, respectfully pray for an Order and Judgment:

1.  Confirming the Arbitrator's Award in all respects;

2.  Directing Showtime to pay Petitioners the Award, in the total amount of $49,831.71;

3.  Directing Showtime to pay interest that has accrued on the Award, at the rate of 18% percent per annum, running from January 26, 2018 (the last date for which interest is calculated in the Award) to the date on which all amounts awarded in the Award are paid to the Funds;

4.  Directing Showtime to pay the attorneys' fees and costs of this proceeding; and

5.  Granting such other relief as this Court may deem just and proper.

Dated: June 22, 2018

                                CARY KANE LLP


                          By:   _____
                                Susan Bruno

                                1350 Broadway, Suite 1400
                                New York, New York 10018

                                *Attorneys for Petitioners*

4818-1280-3174, v. 1